# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DANA McMASTER,<br><br>        Plaintiff,<br><br>    v.<br><br>M. E. SPEARMAN, et al.,<br><br>        Defendants.<br>_____/ | CASE NO. 1:10-cv-01407-SKO PC<br><br>SECOND SCREENING ORDER DISMISSING CLAIM AGAINST DEFENDANT CATE AND EQUITABLE RELIEF CLAIMS, AND FINDING AMENDED COMPLAINT STATES COGNIZABLE EIGHTH AND FIRST AMENDMENT CLAIMS FOR DAMAGES<br><br>(Doc. 11) |

**Second Screening Order**

**I.      Screening Requirement and Standard**

Plaintiff Dana McMaster, a state prisoner proceeding pro se and in forma pauperis, filed this civil rights action pursuant to 42 U.S.C. § 1983 on August 6, 2010. On August 25, 2011, the Court dismissed Plaintiff's complaint, with leave to amend, for failure to state a claim. On October 18, 2011, Plaintiff filed an amended complaint.

The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity or an officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). The Court must dismiss a complaint or portion thereof if the prisoner has raised claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b)(1), (2). "Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that . . . the action or appeal . . . fails to state a claim upon which relief may be granted." 28 U.S.C. § 1915(e)(2)(B)(ii).

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief. . . ." Fed. R. Civ. P. 8(a)(2). Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice," Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S.Ct. 1937 (2009) (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555, 127 S.Ct. 1955 (2007)), and courts "are not required to indulge unwarranted inferences," Doe I v. Wal-Mart Stores, Inc., 572 F.3d 677, 681 (9th Cir. 2009) (internal quotation marks and citation omitted). While factual allegations are accepted as true, legal conclusions are not. Iqbal, 556 U.S. at 678.

Under section 1983, Plaintiff must demonstrate that each defendant personally participated in the deprivation of his rights. Jones v. Williams, 297 F.3d 930, 934 (9th Cir. 2002). This requires the presentation of factual allegations sufficient to state a plausible claim for relief. Iqbal, 556 U.S. at 678-79; Moss v. U.S. Secret Service, 572 F.3d 962, 969 (9th Cir. 2009). The mere possibility of misconduct falls short of meeting this plausibility standard. Iqbal, 556 U.S. at 678; Moss, 572 F.3d at 969.

**II.     Discussion**

    **A.     Summary of Allegations**

Plaintiff, who is incarcerated at Pleasant Valley State Prison in Coalinga, brings this action against California Department of Corrections and Rehabilitation (CDCR) Secretary Matthew L. Cate; Sergeant D. Carlson; and Correctional Officers Garcia, S. Sedwick, and John Does 1 and 2. Plaintiff seeks damages, a declaratory judgment, and injunctive relief based on the alleged violation of his rights under the First and Eighth Amendments of the United States Constitution.

Plaintiff alleges that on March 7, 2009, he was approached by an inmate named Dan, who was a shot caller for the skins. Dan said that Officer Rocha had given him some information about Plaintiff and if it was true, Plaintiff was a dead man. Approximately fifteen minutes later, Plaintiff informed Officer Vang that he had been threatened, he feared for his life, and he wanted off the yard.

Plaintiff was taken to the program office and placed in a holding cell. Present at the time were Sergeant Mendez, Lieutenant Ladd, Defendant Garcia, and Officer Smyth. Sgt. Mendez asked what happened and Plaintiff told them, stating that he could not stay on the yard because the skins

would kill him and he wanted to be placed on protective custody (PC) status and housed on a sensitive needs yard (SNY). Plaintiff was told okay and staff left.

Defendant Garcia later returned and told Plaintiff that administrative segregation (ad-seg) was full, so they were going to assign Plaintiff a cell on the yard until an ad-seg cell became available. Plaintiff expressed concern that inmate Dan was a shot caller for the skins and had homeboys. Defendant Garcia told Plaintiff not to worry because they log every cell assignment in the program office log book and everyone would know about Plaintiff's lock-up, a copy of the order would be sent to the building officer so they would know that Plaintiff was on controlled feed, and a sign would be placed on the cell door.[1] Defendant Garcia left and then returned a few minutes later to tell Plaintiff she was assigning him to cell 143 in building 3, but he would have to give up his lower bunk chrono and sleep on an upper bunk. Plaintiff responded that he could not get up and down from a top bunk because he has a bad ankle and walks with a cane. Defendant Garcia was clearly upset and she walked away.

Thirty minutes later, Officer Smyth came to get Plaintiff and walked him to 5 block. Officer Smyth asked Plaintiff if he was going to the SNY and Plaintiff responded that he did not really have a choice. Plaintiff expressed concern over being in building 5 because inmate Dan had homeboys in building 5. Officer Smyth showed Plaintiff the paperwork and said not to worry because the paperwork would inform the building officers what to do. Officer Smyth spoke to the tower officer, placed the paperwork in the tower's bucket, and informed Officer Speers that Plaintiff had locked up. Officer Speers then took Plaintiff to cell 214, told Plaintiff the toilet did not work well, and wished him good luck in getting it fixed any time soon.

On or around March 8, 2009, Defendant Sedwick came by the cell and Plaintiff informed her that he locked up yesterday, he was waiting to go to ad-seg, and the toilet did not work. Defendant Sedwick said she knew and was going to place a work order for a plumber, and she told Plaintiff he would have to use a bucket for now, which she later brought to him.

///

---

[1] Although not defined by Plaintiff, based on the context used, it appears that the terminology "a lock up" or "to lock up" refers to the segregation of an inmate from the other inmates in the building or yard.

1    Over the next few days on several occasions, Officers Moorelock and Speer came by
2 Plaintiff's cell and told him that Defendants Carlson and Garcia wanted him to move to cell 143 in
3 building 3.  Plaintiff again said he could not get up and down from the top bunk in cell 143, asked
4 why he could not go to ad-seg, and stated that he had guys coming up to his cell door telling him that
5 they were going to kill him for ratting out their shot caller.  Officer Speer just smiled and said,
6 "Ad/Seg is full but they said cell 143 in 3 block has an Ad/Seg pending sign on the door." (Amend.
7 Comp., p. 10.)

8    Between March 8, 2009, and March 18, 2009, Officer Moorelock, his two partners, Officer
9 Speer, Defendant Sedwick, and Defendant Doe 2 were involved in the controlled feeding of inmates
10 in building 5.  At no time were other inmates allowed to be around Plaintiff's cell when Doe 2
11 opened the cell door so that officers could pass him his food tray, which demonstrated that they knew
12 of the circumstances behind his assignment to cell 214.

13    On or around March 18, 2009, there was a knock on Plaintiff's cell door, and Defendant Doe
14 1 was standing outside with inmate Smedley.  Defendant Doe 1 informed Plaintiff that they were
15 putting inmate Smedley in the cell.  Plaintiff protested and stated that inmate Smedley could not be
16 placed in his cell because Plaintiff was separated from the mainline inmates pending ad-seg
17 placement.  Plaintiff told Defendant Doe 1 to go ask the program office, but he said they had sent
18 him over.  Plaintiff said to look at the sign on the cell door, and Defendant Doe 1 responded that it
19 said "CTQ."  Defendant Doe 1 then tapped on the door and it was opened.  Plaintiff said, "You can't
20 put him in the cell [with] me.  Go ask Sedwick," and Defendant Doe 1 responded, "I did," before
21 pushing inmate Smedley into the cell and smiling as he shut the door. (Id., p. 11.)  Inmate Smedley
22 said, "There ain't no mattress in here," and Defendant Doe 1 said, "Don't worry about it," before
23 walking away. (Id.)

24    After exchanging a few words, inmate Smedley swung at Plaintiff and grabbed Plaintiff's
25 cane, hitting Plaintiff on the neck, head, and face with it.  Plaintiff got around inmate Smedley and
26 pressed his face to the crack of the cell door, yelling, "Sedwick!" (Id.)  Defendant Sedwick looked
27 down from the top tier and Plaintiff yelled, "Man down!" (Id.)  Defendant Sedwick pushed her
28 ///

1 alarm and ran down the stairs. Inmate Smedley kept hitting Plaintiff until he saw Defendant
2 Sedwick, at which time he threw Plaintiff's cane on the shelf and sat down on the cell desk.

3 Other officers then showed up and yelled at Plaintiff and inmate Smedley to get down. As
4 Plaintiff was being cuffed up, an officer pushed his face against the wall and told him not to move.
5 Plaintiff asked why they put that guy in his cell and the officer said he did not know. Another officer
6 saw Plaintiff's face and told the officer who cuffed Plaintiff to take him to the medical clinic.

7 As Plaintiff was held in the medical clinic cage, Amedley, a licensed vocational nurse, and
8 Officer Jackson were present. Amedley asked Plaintiff for his statement, and he said, "I'm pending
9 Ad/Seg. He shouldn't have been placed in my cell." (Id., p. 12.) Plaintiff then turned to Officer
10 Jackson and said, "This ain't right and you know it," and Officer Jackson responded, "I know this
11 shouldn't have happened, somebody messed up." (Id.) Amedley then listed Plaintiff's injuries and
12 left.

13 Defendant Garcia arrived and asked, "OK, Mr. McMaster, *now* do you want to go to building
14 3-143?" (Id.) Plaintiff said no, as he was not able to get up and down from the top bunk.

15 Sergeant Athey then came in and asked Plaintiff what happened. Plaintiff told her and she
16 asked him if he wanted to sign a compatibility chrono. Plaintiff said no and Sgt. Athey left.

17 Defendant Garcia returned and said they could not find his lower bunk chrono and were
18 going to put him on the top bunk in building 3, cell 143. Plaintiff protested and said, "This wasn't
19 the way to go about getting me out of the cell, Garcia." (Id.) As Defendant Garcia left, frustrated,
20 she said something to deflect Plaintiff's accusation.

21 Defendant Carlson then arrived after speaking with inmate Smedley and asked Plaintiff what
22 happened. Plaintiff relayed what had happened and Defendant Carlson asked Plaintiff if he started
23 punching Smedley first. Plaintiff said, "Hell no! Did you see the guy?" (Id., p. 13.) Defendant
24 Carlson said, "Yeah, he's pretty big," and Plaintiff stated that Smedley did not have a scratch on him.
25 (Id.)

26 About thirty minutes later, an officer took Plaintiff back to cell 214 in building 5. Inmate
27 Smedley was later housed five cells away, in cell 224.
28 ///

On March 19, 2009, Officer Speer came by during chow time and asked Plaintiff what happened. Plaintiff said, "I got the piss beat out of me with my own cane! They slipped a guy from the mainline in with me." (Id.) Officer Speer said, "That's because you don't have the right sign on your door," referring to the ad/seg sign. (Id.) Plaintiff asked how he could get one and Officer Speer said, "I don't know but the guy in C-3-143 has an ad/seg pending sign on his door." (Id.) By that time, Plaintiff's face was swollen, his head and neck were hurting him, he could not see clearly out of his right eye, and he was scared they were going to do it again, so when he saw Officer Speer on March 20, 2009, he told him to tell the program office he was willing to go to cell 143 in building 3. Officer Speer said he would tell them, and the other officer said, "Yeah, he's scared," and laughed. (Id.)

On March 21, 2009, Plaintiff spoke to Defendant Sedwick about the assault and asked for an inmate appeal form. It took two days to get a pencil, so he filed an appeal on March 23, 2009, handing it to Defendant Sedwick.

On March 24, 2009, Officer Moorelock came to Plaintiff's cell and told him that he had been told Plaintiff was now willing to go to C-3-143. Plaintiff said he was, as long as it would save him from another whipping, to which Moorelock replied, "I wasn't here for that." (Id., p. 14.)

Officer Moorelock came back later and escorted Plaintiff to cell 143 in building 3. Plaintiff saw there was a sign on the door stating, "Ad/Seg Pending." (Id.) Plaintiff asked his new cellmate, inmate Ferraiz, how long the sign had been there. Inmate Ferraiz said it was put up when he was locked up, which was more than a month ago.

At dinner time, Plaintiff against Officer Smyth if he could see a doctor and Smyth said he would bring Plaintiff a sick call slip but he never did.

On March 25, 2009, Plaintiff was escorted to ad-seg and he asked an officer if he could see a doctor. The officer told him to fill out a slip, and it would be a while, but he would eventually see one.

On April 20, 2009, Defendant Carlson came and interviewed Plaintiff regarding his inmate appeal. Defendant Carlson told Plaintiff that things would go a lot easier for him if he signed off on the appeal. When Plaintiff refused, Defendant Carlson said, "Well, then you better take some boxing

6

1 lessons." An officer then took Plaintiff out of his cell and he freaked out, writing to the court and the Department of Justice the next day. Plaintiff encountered several problems in ad-seg and to the present, whenever he gets a new cellmate, he thinks he is being set up for a hit.

### B.  Eighth Amendment Failure-to-Protect Claim

#### 1.  Legal Standard

The Eighth Amendment protects prisoners from inhumane methods of punishment and from inhumane conditions of confinement. Morgan v. Morgensen, 465 F.3d 1041, 1045 (9th Cir. 2006). Although prison conditions may be restrictive and harsh, prison officials must provide prisoners with food, clothing, shelter, sanitation, medical care, and personal safety. Farmer v. Brennan, 511 U.S. 825, 832-33, 114 S.Ct. 1970 (1994) (internal citations and quotations omitted). Prison officials have a duty to take reasonable steps to protect inmates from physical abuse. Farmer, 511 U.S. at 833; Hearns v. Terhune, 413 F.3d 1036, 1040 (9th Cir. 2005). The failure of prison officials to protect inmates from attacks by other inmates may rise to the level of an Eighth Amendment violation where prison officials know of and disregard a substantial risk of serious harm to the plaintiff. E.g., Farmer, 511 U.S. at 847; Hearns, 413 F.3d at 1040.

#### 2.  Defendant Cate

Under section 1983, Plaintiff must link the named defendants to the participation in the violation at issue. Iqbal, 556 U.S. at 676-77; Simmons v. Navajo County, Ariz., 609 F.3d 1011, 1020-21 (9th Cir. 2010); Ewing v. City of Stockton, 588 F.3d 1218, 1235 (9th Cir. 2009); Jones, 297 F.3d at 934. Liability may not be imposed on supervisory personnel under the theory of *respondeat superior*, Iqbal, 556 U.S. at 676-77, 129 S.Ct. at 1948-49; Ewing, 588 F.3d at 1235, and as an executive-level administrator, Defendant Cate may only be held liable if he "participated in or directed the violations, or knew of the violations and failed to act to prevent them," Taylor v. List, 880 F.2d 1040, 1045 (9th Cir. 1989); accord Starr v. Baca, 652 F.3d 1202, 1205-08 (9th Cir. 2011); Corales v. Bennett, 567 F.3d 554, 570 (9th Cir. 2009); Preschooler II v. Clark County School Board of Trustees, 479 F.3d 1175, 1182 (9th Cir. 2007); Harris v. Roderick, 126 F.3d 1189, 1204 (9th Cir. 1997). Some culpable action or inaction must be attributable to Defendant Cate and while the creation or enforcement of, or acquiescence in, an unconstitutional policy, as alleged here, may

support a claim, the policy must have been the moving force behind the violation. Starr, 652 F.3d at 1205; Jeffers v. Gomez, 267 F.3d 895, 914-15 (9th Cir. 2001); Redman v. County of San Diego, 942 F.2d 1435, 1446-47 (9th Cir. 1991); Hansen v. Black, 885 F.2d 642, 646 (9th Cir. 1989).

While Plaintiff alleges that Defendant Cate is liable for the violation of his rights because there is no policy in place governing the housing of prisoners who are on confinement to quarters status while they are seeking PC status and pending ad-seg placement, there is no support for an Eighth Amendment claim against Defendant Cate. Based on Plaintiff's allegations, his injury was caused because certain staff members endangered his safety, apparently intentionally because he would not accept the cell assignment they wanted him to accept. Plaintiff's amended complaint is devoid of any facts which would support a claim that he was attacked as a direct result of the failure on Defendant Cate's part to enact a policy regarding CTQ status and prisoners seeking PC and ad-seg placement and that this failure amounted to deliberate indifference. Accordingly, Plaintiff's claim against Defendant Cate shall be dismissed, with prejudice.

### 3. Defendants Carlson, Garcia, Sedwick, Doe 1, and Doe 2

The Court finds that Plaintiff states an Eighth Amendment claim against Defendants Carlson, Garcia, Sedwick, Doe 1, and Doe 2 for acting with deliberate indifference to a substantial risk of harm to Plaintiff's safety. There are sufficient facts pled to support a claim that Defendants were involved in intentionally endangering Plaintiff's safety by placing a mainline inmate in his cell despite the existing threats against Plaintiff.

### C. First Amendment Retaliation Claim

Allegations of retaliation against a prisoner's First Amendment rights to speech or to petition the government may support a section 1983 claim. Rizzo v. Dawson, 778 F.2d 527, 532 (9th Cir. 1985); see also Valandingham v. Bojorquez, 866 F.2d 1135 (9th Cir. 1989); Pratt v. Rowland, 65 F.3d 802, 807 (9th Cir. 1995). "Within the prison context, a viable claim of First Amendment retaliation entails five basic elements: (1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal." Rhodes v. Robinson, 408 F.3d 559, 567-68 (9th Cir. 2005); accord

Watison v. Carter, 668 F.3d 1108, 1114-15 (9th Cir. 2012); Brodheim v. Cry, 584 F.3d 1262, 1269 (9th Cir. 2009).

Plaintiff alleges a retaliation claim against Defendant Carlson for threatening him when he refused to abandon his inmate appeal. Grieving prison conditions is a protected activity and it is impermissible for prison officials to threaten inmates for exercising this right. Brodheim, 584 F.3d at 1270-71. In as much as Plaintiff alleges that the threat left him fearing he would be set up for a hit, Plaintiff's allegations are sufficient to support a viable retaliation claim. Id.

### D.    Equitable Relief Claims

Finally, in addition to damages, Plaintiff seeks a declaration that his rights were violated and an injunction prohibiting Defendant Cate and his successors, agents, employees, and anyone else acting in concert from destroying evidence relevant to this suit and from retaliating against him, and requiring them to create and implement a policy that protects prisoners who are confined to quarters pending ad-seg placement or who are confined to ad-seg.

Because Plaintiff's claims for damages necessarily entail a determination whether his rights were violated, his separate request for declaratory relief is subsumed by those claims. Rhodes, 408 F.3d at 565-66 n.8 (quotation marks omitted).

With respect to injunctive relief, Plaintiff must establish standing for each form of relief sought. Summers v. Earth Island Institute, 555 U.S. 488, 493, 129 S.Ct. 1142 (2009) (citation omitted); Mayfield v. United States, 599 F.3d 964, 969 (9th Cir. 2010) (citation omitted). This requires Plaintiff to show that he is under threat of suffering an injury in fact that is concrete and particularized; the threat must be actual and imminent, not conjectural or hypothetical; it must be fairly traceable to challenged conduct of the defendant; and it must be likely that a favorable judicial decision will prevent or redress the injury. Summers, 555 U.S. at 493 (quotation marks and citation omitted); Mayfield, 599 F.3d at 969.

In addition, any award of equitable relief is governed by the Prison Litigation Reform Act, which provides in relevant part, "Prospective relief in any civil action with respect to prison conditions shall extend no further than necessary to correct the violation of the Federal right of a particular plaintiff or plaintiffs. The court shall not grant or approve any prospective relief unless

the court finds that such relief is narrowly drawn, extends no further than necessary to correct the violation of the Federal right, and is the least intrusive means necessary to correct the violation of the Federal right." 18 U.S.C. § 3626(a)(1)(A).

In this instance, Plaintiff's First and Eighth Amendment claims arise from past conduct which occurred in 2009, and the forms of injunctive relief he seeks do not serve to remedy those legal claims. As a result, Plaintiff does not have standing to seek injunctive relief in this action.[2] 18 U.S.C. § 3626(a)(1)(A); . Summers v. Earth Island Institute, 555 U.S. 488, 493, 129 S.Ct. 1142, 1149 (2009); Mayfield v. United States, 599 F.3d 964, 969 (9th Cir. 2010).

### III.  Conclusion and Order

The Court finds that Plaintiff's amended complaint states an Eighth Amendment claim against Defendants Carlson, Garcia, Sedwick, Doe 1, and Doe 2 and a First Amendment retaliation claim against Defendant Carlson. However, Plaintiff has not stated a cognizable claim against Defendant Cate and Plaintiff's equitable relief claims are not cognizable. Based on the nature of the deficiencies at issue and the previous opportunity to amend, the Court finds that further leave to amend is not warranted. Lopez v. Smith, 203 F.3d 1122, 1130 (9th Cir. 2000); Noll v. Carlson, 809 F.2d 1446, 1448-49 (9th Cir. 1987).

Accordingly, it is HEREBY ORDERED that:

1. Plaintiff's claim against Defendant Cate is dismissed, with prejudice, for failure to state a claim and the Clerk's Office shall terminate Cate as a party to this action;
2. Plaintiff's claims for declaratory and injunctive relief are dismissed for failure to state a claim; and

///

///

---

[2] With respect to Plaintiff's specific concern over the retention of evidence, Plaintiff is informed that "[p]arties to a civil action in federal court are under a duty to preserve evidence that they know is relevant or reasonably could lead to the discovery of admissible evidence." Young v. Facebook, Inc., No. 5:10-cv-03579-JF/PVT, 2010 WL 3564847, at *1 (N.D.Cal. Sept. 13, 2010) (citing Leon v. IDX Systems, Corp., 464 F.3d 951, 959 (9th Cir. 2006)). "This obligation, backed by the court's inherent power to impose sanctions for the destruction of such evidence, is sufficient in most cases to secure the preservation of relevant evidence." Young, 2010 WL 3564847, at *1.

3.   This action shall proceed as one for damages on Plaintiff's amended complaint against Defendants Carlson, Garcia, Sedwick, Doe 1, and Doe 2 on Plaintiff's Eighth Amendment claim and against Defendant Carlson on Plaintiff's First Amendment claim.

IT IS SO ORDERED.

**Dated:   September 5, 2012**                /s/ Sheila K. Oberto
                                    UNITED STATES MAGISTRATE JUDGE